**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

TXEN Partners, LLC, d/b/a Protection Direct,
an Illinois limited liability company,

                Plaintiff,

    v.

JOHN DOE 1 a/k/a "BOBRTC"

JOHN DOE 2 d/b/a BOBRTC.TEL; and

JOHN DOES 3-50

                Defendants.

Case No.:  3:20-cv-00975

**JURY TRIAL DEMANDED**

# COMPLAINT

Plaintiff TXEN Partners, LLC, d/b/a Protection Direct ("PD") states the following for its Complaint:

## NATURE OF THE ACTION

1.      This is a civil action to stop an illegal undertaking, including false advertising and a computer fraud and abuse scheme, aimed at shutting down PD's business through mass telephone dialing of PD's inbound telephone system.  The goal of the illegal undertaking is to block PD's prospective customers from contacting PD so that PD cannot provide services to those consumers.

2.      The Defendants, vigilantes who seek to shutter companies they label as telemarketing scammers by overwhelming those companies' phone systems with mass automated-dialing and other disruptive dialing practices (i.e., Telephone Denial of Service, "TDoS" attacks), have gone too far here.  Defendants have targeted an innocent party, PD, based on nothing more than conjecture and  speculation.

3.      PD is in the business of selling vehicle service contracts ("VSCs").  Its *sole* method of marketing VSCs is through direct mail.  It does not do any outbound marketing by autodialing consumers.  Customers that receive PD's mailings call PD.

4.      PD is not a robocalling company; PD does not "scam" the very consumers it relies on for its ongoing business.  Yet, Defendants recklessly have treated PD as a scam and injured PD through their unlawful acts.

5.      Defendants' unlawful acts range from agreeing on and orchestrating TDoS attacks on PD, to providing the technology needed to autodial PD, to falsely representing the nature of PD's business, to tampering with PD computer program and systems through TDoS dialing of PD's inbound telephone system. Defendants' TDoS scheme inundated PD's phone lines with so

many calls that legitimate customers could not reach PD and transact business with PD.  The calls also frustrated PD's customer service representatives to no end.

6.      The Defendants have coordinated with one another and orchestrated and conducted their wrongful TDoS attacks using a website, apps and services – including chat forums and dialing technology – operated and provided by BobRTC (John Doe 1) and the website, BobRTC.tel (John Doe 2).

7.      The Defendants, including BobRTC, use the BobRTC.tel website to hide their true identities while wreaking havoc via TDoS attacks on PD's business.

8.      In early September, 2020 BobRTC.tel labeled PD as a "Scam" on its website. Some of the John Doe Defendants, working with BobRTC, also used BobRTC.tel to upload PD's inbound telephone number to BobRTC.tel.  That website provides an autodialing technology that people and bots can use to TDoS attack PD's telephone system and the computer system on which the telephone system operates.

9.      The unrelenting attack on PD's telephone system – costing PD many thousands of dollars in wasted mail costs, lost new business, and personnel expenses incurred to defend against the attacks —all arose because of Defendants' unsubstantiated conjecture that PD is a "scam."

10.      PD seeks an injunction against Defendants to end their unlawful campaign against PD, as well as damages that are climbing daily.

11.      PD brings this action against Defendants for false advertising under the Lanham Act, injurious falsehood, tortious interference with business expectancies; violations of the federal Computer Fraud and Abuse Act and  Illinois Computer Tampering Act,; and other unlawful conduct.

## PARTIES

12.     Plaintiff PD is an Illinois limited liability company with its principal place of business in Sauget, Illinois.  PD operates an inbound calling system and associated marketing call center from its Sauget offices.

13.     Defendant John Doe 1, BobRTC, is the owner, operator of the website BobRTC.tel.  BobRTC uses "BobRTC" as his or her user name.  While its, his or her identity is not yet known, BobRTC's  acts injured PD in Illinois.

14.     Defendant John Doe 2, BobRTC.tel, provides the platform and technology tools its users and website members use to TDoS attack the businesses of those entities that BobRTC.tel and its users subjectively label as scammers.  BobRTC.tel coordinates with its users in identifying targets for attack. BobRTC.tel injured PD in Illinois.

15.     Defendants John Does 3-50 are other entities and/or persons involved in the misconduct and violations but their identities are not yet known.  The John Doe Defendants mask their identities by operating through user accounts that allow them to coordinate with one another but conceal their identities.  John Does 3-50's acts injured PD in Illinois.

## JURISDICTION AND VENUE

16.     This action arises under 15 U.S.C. § 1125 and 18 U.S.C. § 1030 as well as the statutory and common law of the state of Illinois.

17.     This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

18.     This Court has personal jurisdiction over Defendants.  Defendants called or otherwise flooded PD's Illinois-based telephone system, which conduct constitutes the basis for this action.  Further, Defendants' acts constitute the commission of a tort within Illinois that impacts or affects residents of Illinois.

19.     Venue is proper in this District under 28 U.S.C. § 1391 against Defendants BobRTC and BobRTC.tel.

20.     Venue is proper in this District under 28 U.S.C. § 1391 against all John Does. All Defendants have committed tortious acts within this District, including the acts alleged herein and directed against PD's Illinois operations; a substantial part of the events giving rise to these claims occurred and continues to occur in this District.

<strong><u>FACTS COMMON TO ALL CLAIMS</u></strong>

A.     **PD's Business, Including Marketing And Sales To Consumers**

21.     PD is a seller of VSCs meaning it markets and sells service contracts to automobile owners for certain mechanical breakdowns.

22.     PD runs its VSC marketing and sales operations from Sauget, Illinois.

23.     PD markets VSCs to new customers (i.e., other than those with whom it has an established business relationship) through advertisements mailed directly to consumers; to a much lesser degree it also markets through its website.  PD does not do any outbound marketing by autodialing consumers.

24.     The mailed advertisements contain a unique phone number that customers can call if they wish to purchase a VSC.  The phone number, (888) 598-0258, is dedicated to receiving inbound customer sales inquiries ("PD Number").

25.     To accommodate customer inbound calls, PD operates a call center as part of its Sauget, Illinois operations.  Through a computer system and associated computer programming ("PD Computer System"), inbound calls are routed to PD customer service representatives who then provide service and assistance to prospective customers.

26.     Through consumer calls to the PD Number, as managed by the PD Computer System, PD essentially makes all of its new customer sales for VSCs.

B.     **BobRTC.tel Provides Resources To And Coordinates With Its Users To Attack Phone Numbers Belonging to Subjectively Identified Targets**

27.     BobRTC.tel is a web-based platform that allows "scam baiters" to use Voice Over Internet Protocol ("VOIP") to engage in vigilante justice premised on nothing more than the subjective intuition of BobRTC.tel and its users.  BobRTC.tel uses its telephone technology and user base to lock-up the telephone systems of entities that BobRTC.tel and its users recklessly label as telephone fraudsters.

28.     The BobRTC.tel platform includes a function that allows users to load alleged "scammer numbers" into a registry ("BobRTC.tel Phonebook").  BobRTC.tel's dialing technology then allows users and bots to manually call a target from a spoofed telephone number, autodial a target, assail call recipients with pre-recorded messages, and teleconference dial a target with other "scam baiters."  The overriding goal of the dialing is to close down the targeted telephone number(s).

29.     BobRTC.tel also provides a chat function – a "scambaiting forum" – through which users can publish and advertise the identity of supposed scammers, discuss best practices for fooling supposed telephone scammers and coordinating spoofing attacks. To encourage participation in and enlist more scam baiters into its telephone dialing campaigns, BobRTC.tel has turned scam baiting into a game.

30.     Users can gain "experience points" ("XP") based on the number of telephone numbers he or she dials from the BobRTC.tel Phonebook.  Users can then trade their XP for features like "call flooding" and voice bots that allow callers to mask their voice with a computer algorithm.

31.     The BobRTC.tel platform also has a link to forums or threads on separate websites (e.g., Discord and Scammer.info) that users can use to rally other scam baiters and grow the breadth of attacks on targeted telephone numbers.

32.     "BobRTC", the apparent owner/operator of BobRTC.tel, participates directly with BobRTC.tel users in identifying telephone numbers for the BobRTC.tel Phonebook and orchestrating coordinated attacks against those numbers. The Defendants coordinate their activities using anonymous accounts on web forums, including BobRTC.tel's scambaiting forum.

33.     During attacks, BobRTC.tel users, including the John Doe Defendants, use BobRTC.tel and its services to disguise their location and telephone numbers when calling targets.

34.     These attacks, often TDoS attacks, have no purpose other than to harass and otherwise interfere with a target's business.

35.     The callers, who are sometimes computer-controlled, and other times human, occupy the target's phone lines and employees for hours on end.

36.     These calls are not a prank; they are concerted, malicious and a criminal effort to cause harm to the target. The Department of Homeland Security has condemned such attacks, including because of the significant harm they can do to consumers and the targets of the attacks.

**C.     BobRTC And The John Does Plan And Launch Attacks On PD Through BobRTC.tel, Falsely Depicting PD As A "Vehicle Warranty Scam"**

37.     In or around September 5, 2020, one of the John Doe Defendants who goes by the user name, "Lenny", began a discussion on the BobRTC.tel scambaiting forum.  In that post, Lenny stated he had identified a "scammer" and provided an image of a lawful PD telemarketing

mailer. The mailer is representative of how PD lawfully markets to prospective consumers.  The mailer contained the PD Number:  (888) 598-0258.

38.     The BobRTC.tel forum webpage containing the PD mailer and injurious remarks about PD is prominently titled, "(888) 598-0258 Vehicle Warranty Scam."

39.     Responding to Lenny on BobRTC.tel on September 5, 2020, BobRTC (John Doe 1) provided: "Some helpful directory information about this number …."

40.     On the same day, September 5, 2020, another John Doe Defendant, who goes by the user name, "WhiskeyTangoFoxtrot", vouched to the other John Does, including BobRTC, that the PD Number should be published.  Specifically, WhiskeyTangoFoxtrot wrote: "Vouching for this number and publishing it."

41.     WhiskeyTangoFoxtrot "vouched" for publishing – that is, to load the PD Number onto the BobRTC.tel Phonebook so that users could TDoS attack PD – based on nothing more than his or her own unverified review of PD.

42.     Lenny embraced the publishing and used the BobRTC.tel dialing technology to dial the PD Number, reporting on September 5 to the other John Does and any other scam baiters using BobRTC.tel information about PD's inbound telephone call system.

D.     **Defendants' Fully Attack And Cripple The PD Inbound Call Center For Days At A Time**

43.     Defendants then began the full assault on PD on September 5, 2020, coordinating and synchronizing their attacks to occur simultaneously, continuously and persistently against PD.

44.     By mid-day of September 5, the Defendants' orchestrated attack on the PD Computer System, which manages and routes calls to the PD Number, had crippled PD's inbound customer call operations.  In fact, the severity of the attack led PD to shut down its

inbound operations from the afternoon of Saturday, September 5 until the morning of Tuesday, September 8, 2020.

45.    On Tuesday, September 8, PD attempted to re-open its inbound customer call operations.  However, the Defendants quickly countered with yet another assault on PD, assailing the PD Computer System and thereby crippling PD's inbound customer call operations once more.

46.    This pattern continued through the remainder of the week – PD would open for business and the Defendants would strike the PD Computer System via TDoS dialing of the PD Number.  This activity halted PD's operations every day.

47.    In an effort to combat the attacks, PD extended the hours of its staff, including call center representatives.  Because the call center representatives had borne the brunt of the Defendants' incessant calls, they were tired, frustrated, and worn thin.  To entice these staff members to not only continue their efforts but to expand them, PD offered monetary bonuses. Through the added hours, PD hoped to weed through Defendants' spoofing calls so that it could connect with actual, live, prospective customers.  However, the Defendants' call onslaught continued to create ever increasing frustration for PD and its call center representatives.

48.    Not only were the Defendants' calls into the PD Computer System tying up PD's inbound call system, the Defendants also were making individual calls to PD that involved confusing and misleading pre-recorded messages, all of which enhanced the frustration and aggravation of PD's employees. Other individual calls involved John Doe Defendants speaking directly to PD customer representatives and drawing those representatives into non-sensical and wasteful discussions.

49.     The ultimate goal and result of the Defendants' attacks was to not only impair PD's Computer System and therefore its inbound call center operations, but to overload PD's inbound call center operations altogether.

**COUNT ONE**
**False Advertising**
**(Lanham Act Section 15 U.S.C. § 1125)**
**(Against BobRTC.tel)**

50.     PD restates the preceding paragraphs by reference as if fully incorporated herein.

51.     BobRTC.tel disseminated and published advertising materials that are untrue and/or misleading, and falsely describe PD's business operations. These acts violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Exhibit A hereto contains the offending, published advertisement.

52.     BobRTC.tel marketed and published its offending content on the internet, conveying the explicit factual message that PD is a "Vehicle Warranty Scam."  The BobRTC.tel content also directly connects the supposed "scam" to telemarketing through the PD Number, which number BobRTC.tel specifically identifies.

53.     PD is not a vehicle warranty scam.  Moreover, PD has not used the PD Number for purposes of any improper marketing.  It markets VSCs to new, prospective customers almost exclusively by mail.  As such, BobRTC.tel's statements are literally false, or, literally false by necessary implication.

54.     Because of BobRTC.tel's false statements, consumers will easily be deceived into thinking PD is an unscrupulous telemarketer that improperly dials consumers with the intention of defrauding those consumers.

55.      PD is harmed by BobRTC.tel's false statements because they have deceived or will deceive consumers, including users of BobRTC.tel, about the nature, characteristics and qualities of PD's VSC services and will prompt consumers to avoiding business with PD.

56.      On information and belief, BobRTC.tel committed its acts with reckless disregard for the truth about PD's business.  BobRTC.tel's reckless disregard led to confusion, and mistake, or deceived the public, including users of BobRTC.tel.

57.      BobRTC.tel likely will continue to deceive consumers, including the users of BobRTC.tel.  Unless enjoined, BobRTC.tel's conduct will continue to cause irreparable harm to PD for which there is no adequate remedy at law.

58.      As a direct and proximate result of BobRTC.tel's publication of false statements, PD is entitled to a permanent injunction enjoining and restraining BobRTC.tel and its agents and assigns from engaging in the above-mentioned acts.

59.      PD also is entitled to recover from PD under the Lanham Act all damages suffered as a result of these acts, as well as costs and reasonable attorneys' fees incurred in pursuing relief since BobRTC.tel did not conduct sufficient due diligence about PD before publishing the false statements.

## COUNT TWO
## Publication of Injurious Falsehoods
## (Against BobRTC.tel)

60.      PD restates the preceding paragraphs by reference as if fully incorporated herein.

61.      BobRTC.tel's website prominently published that PD is a "Vehicle Warranty Scam" that perpetrates its scam through the PD Number, (888) 598-0258.

62.      As described in Count One above, BobRTC.tel's statements are false and BobRTC.tel published them with reckless disregard for their truth or falsity.

63.     For the reasons described above, the statements on BobRTC.tel have harmed PD's pecuniary interests, and BobRTC.tel recognized or should have recognized that its statements would have the effects illustrated by the preceding allegations of fact.

64.     PD has been damaged because of BobRTC.tel's unlawful conduct. The amount of those damages will be determined at trial but they certainly will be in the hundreds of thousands at a minimum.

65.     Further, as a direct and proximate result of BobRTC.tel's conduct, PD is entitled to a permanent injunction enjoining and restraining BobRTC.tel and its agents and assigns from engaging in the above-mentioned acts, and an award of punitive damages as a result of its failure to conduct sufficient due diligence about PD before publishing the false statements.

## COUNT THREE
### Violation of the Computer Fraud and Abuse Act
### (Against All Defendants)
### (18 U.S.C. § 1030)

66.     PD restates the preceding paragraphs by reference as if fully incorporated herein.

67.     PD's telephone system and its phone call routing configuration are based on computers and associated computer programs – the previously defined PD Computer System – which are involved in interstate commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

68.     BobRTC.tel, BobRTC, and the other John Doe Defendants knowingly and intentionally accessed the PD Computer System without authorization and/or in excess of any actual or implied authorization when they coordinated and engaged in a massive TDoS attack that locked up the PD Number and inbound call center operations for hours and days on end.

69.     Defendants knowingly, willfully, and with an intent to defraud, accessed the PD Computer System. Defendants took these actions for their own benefit and to PD's detriment.

70.     Defendants have caused PD to lose far in excess of $5,000 during September, 2020, let alone during a twelve-month period.

71.     Defendants have damaged PD in that the dialing attacks have caused a loss in sales, prevented an indeterminate number of potential consumers from reaching PD's customer service representatives to purchase VSCs, have forced PD to expend additional amounts to try and stop the unauthorized access and abuse of the PD Computer System, and have required PD to spend further amounts to assist its personnel in handling the increased work load and associated travail directly caused by Defendants' attacks.

72.     PD seeks compensatory and other equitable relief under 18 U.S.C. § 1030 (g) in an amount to be determined at trial.

73.     PD has suffered significant and irreparable and not fully calculable harm and injuries resulting from the conduct, which harm will continue unless this Court puts a stop to the TDoS attacks and enjoins Defendants from further use of the BobRTC.tel platform to attack the PD Computer System.  PD has no complete remedy at law.

## COUNT FOUR
### Trespass to Chattels
### (All Defendants)

74.     PD restates the preceding paragraphs by reference as if fully incorporated herein.

75.     During all material times alleged herein, the PD Computer System included goods or personal chattel belonging to PD.

76.     PD did not authorize any of the Defendants to assist in or otherwise perform the TDoS attacks on PD's Computer System.

77.     Defendants intentionally coordinated the TDoS attacks on the PD Computer System through synchronized use of the dialing technology and support provided by BobRTC.tel.

78.     The TDoS attacks have severely impaired and at times completely halted PD's use of the PD Number, and totally interfered with PD use of the PD Computer System and functionality of the PD inbound call center.

79.     All Defendants organized the trespass and at least John Does 3-50 actually trespassed against PD's chattels.  The John Does used the PD Computer System in a manner exceeding any authority granted to access that system to unlawfully prevent prospective customers from contacting PD's customer service representatives.

80.     As a direct and proximate result of the Defendants' TDoS attacks, PD has been damaged.  The amount of those damages will be determined at trial.

81.     Further, the actions complained of herein were conscious, intentional, willful, wanton and malicious, entitling PD to an award of punitive damages.

82.     PD has no adequate remedy at law for the continued trespass to chattels and seeks injunctive relief to terminate Defendants' trespass.

83.     PD seeks to recover its attorneys' fees in connection with the injunctive relief.

### COUNT FIVE
### Tortious Interference with Business Expectancy
### (All Defendants)

84.     PD restates the preceding paragraphs by reference as if fully incorporated herein.

85.     PD has business expectancies for those prospective customers it reaches via direct mail advertisements.

86.     Defendants are familiar with PD's business model and how it reaches consumers by direct mailers.  Defendants actually published a copy of a mailer on BobRTC.tel.

87.     Defendants intentionally interfered with PD's business expectancy for its prospective customers by preventing those prospective customers from making contractual purchases from PD.

88.     Defendants' intentional interference with PD's expectancies was unjustified and done in a manner, as described in the preceding paragraphs, that employed improper means.

89.     Defendants' tortious interference with PD's expectancies has caused PD to suffer damages in an amount to be determined at trial.

90.     Defendants' conduct was willful and performed with malicious motive and reckless indifference to the rights of others entitling PD to punitive damages.

**COUNT SIX**
**Violation of the Illinois Computer Tampering Act**
**(All Defendants)**
**(720 ILCS § 5/17-51)**

91.     PD restates the preceding paragraphs by reference as if fully incorporated herein.

92.     720 ILCS § 5/17-51 permits a Plaintiff to recover "appropriate relief" to include damages and injunctive relief.

93.     Computer tampering under Illinois law occurs when, without authorization or in excess of authority granted, a person knowingly "inserts or attempts to insert a program into a computer or computer program knowing or having reason to know that such program contains information or commands that will or may … cause loss to the users of that computer or the users of a computer which accesses or which is accessed by such program."  720 ILCS § 5/17-51 (a)(4).

94.     The Defendants repeatedly and intentionally assailed the PD Computer System knowing or having reason to know that each TDoS attack on the PD Computer System would cause loss to PD as a user of the PD Computer System.  PD relied on and used the system to operate a key sales and customer service component of its business.

95.     In launching their attacks, the Defendants exceeded any authorization that they had been granted to access or otherwise interact with the PD Computer System.

96.     PD has been injured by Defendants' conduct and damaged in an amount to be determined at trial.  Further, because PD's remedy at law is inadequate, PD also seeks injunctive relief to prevent continuing or future TDoS attacks on the PD Computer System.

97.     In addition to other damages and relief available to it, PD is entitled to recover its reasonable attorney's fees and litigation expenses.

### COUNT SEVEN
### Civil Conspiracy
### (All Defendants)

98.     PD restates the preceding paragraphs by reference as if fully incorporated herein.

99.     Defendants conspired and agreed with one another, including through the use of message boards and other online forums they employed to communicate with one another, to unlawfully: (a) access the PD Computer System without authority or in excess of the authority granted; (b) prevent prospective customers from contacting PD's customer service representatives and from purchasing new VSCs from PD; and (c) tortiously interfere with PD's business expectancies with prospective customers.

100.    The conspiring Defendants committed numerous overt acts in furtherance of their agreement and conspiracy, including loading the PD Number into the BobRTC.tel program, identifying PD as a "Vehicle Warranty Scam"; publishing posts on BobRTC.tel to encourage and coordinate TDoS attacks against PD; structuring TDoS attacks; executing synchronized TDoS attacks against PD using the BobRTC.tel platform; and reporting on their TDoS attacks.

101.    As a direct result of the foregoing conduct, the conspiring Defendants have caused and continue to cause damages to PD, including but not limited to fees and costs PD is expending to protect itself from further TDoS and other dialing attacks by Defendants.  The amount of PD's damages will be determined at trial.

102.    The conspiring Defendants' conduct was willful and malicious and performed with a reckless indifference to the rights of others, thereby entitling PD to punitive damages.

## CONCLUSION

WHEREFORE, PD prays the Court enter judgment in its favor and award it relief as follows:

1.    That the Court permanently restrain and enjoin Defendants and their agents and assigns from any and all further posting or disseminating of the PD Number, uploading the PD Number into BobRTC.tel or similar systems and from engaging in any dialing of the PD Number through the PD Computer System or otherwise;

2.    That the Court permanently restrain and enjoin Defendants and their agents and assigns from any other act likely to induce others to dial PD for any purpose other than legitimate customer inquiries;

3.    That the Court order Defendants to remove all publications, postings or advertisements from BobRTC.Tel or any other platform concerning PD, including removal of the PD Number;

4.    That PD be awarded all actual, punitive, exemplary, and other damages incurred as a direct and proximate cause of Defendants' unlawful conduct;

5.    That Defendants pay PD's reasonable attorneys' fees and expenses based on Defendants' willful and deliberate conduct in this exceptional case pursuant to 15 U.S.C. § 1117(a);

6.    That the Court grant PD such other and further relief as the Court may deem just and proper.

## JURY DEMAND

PD hereby demands a jury trial on all issues so triable.

Dated:  September 23, 2020        Respectfully Submitted,

By: *s/Jeffrey H. Kass*
Jeffrey H. Kass (Illinois Bar No. 6231029)
LEWIS BRISBOIS BISGAARD & SMITH LLP
1700 Lincoln Street, Suite 4000
Denver, Colorado 80203
Tel.:    303-861-7760
Fax:    303-861-7767
Jeffrey.Kass@lewisbrisbois.com

*Attorneys for Plaintiff*